FILED
COURT OF APPEALS
DIVISION II

2013 AUG -6 AM 9: 14

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| LOIS J. NELSON, deceased,<br><br>　　　　　　　Appellant,<br><br>　v.<br><br>WASHINGTON STATE DEPARTMENT OF<br>LABOR AND INDUSTRIES,<br><br>　　　　　　　Respondent. | No. 42456-8-II<br><br><br>ORDER GRANTING MOTION<br>TO PUBLISH |

The Department of Labor and Industries moves this court for publication of its unpublished opinion filed on June 25, 2013. After review the records and files herein, the court grants the motion.

It is ORDERED that the final paragraph that reads "A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered." is deleted.

It is further ORDERED that the opinion is now published.

DATED: this _____6th_____ day of _____August_____, 2013.

PANEL: Van Deren, J.P.T.; Worswick, C.J.; Penoyar, J.

FOR THE COURT:

_____
Chief Judge

FILED
COURT OF APPEALS
DIVISION II

2013 JUN 25 AM 9: 43

STATE OF WASHINGTON

BY
DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| LOIS J. NELSON, deceased, | No. 42456-8-II |
| Appellant, | |
| v. | |
| WASHINGTON STATE DEPARTMENT OF LABOR AND INDUSTRIES, | UNPUBLISHED OPINION |
| Respondent. | |

PENOYAR, J. — Lois Nelson was injured on the job in 2003. Between the time of her injury and her unrelated death in 2006, she received medical and vocational services and some time-loss benefits for temporary total disability. After she died, the Washington State Department of Labor and Industries (Department) closed her claim in an order that categorized her as permanently totally disabled. This prevented any award to Nelson's estate (Estate) for her disability.

The Estate argues that Nelson should have been categorized as permanently partially disabled, entitling the Estate to an award. Having been unsuccessful in appeals before the Department, the Board of Industrial Insurance Appeals (Board), and the superior court, the Estate now appeals to this court. The Estate argues that the superior court erred by concluding that (1) Nelson was permanently totally disabled at the time of her death, (2) Nelson was not entitled to any benefits for permanent partial disability, and (3) Nelson was not owed any unpaid benefits for temporary total disability.

The superior court's unchallenged findings support its conclusion that Nelson was permanently totally disabled at the time of her death. Furthermore, Nelson cannot receive a permanent partial disability award for the 2003 injury when the finding of permanent total

disability was based in part on this injury. Finally, the Estate has failed to identify which temporary total disability benefits were unpaid and owed to Nelson. As a result, we affirm.

## FACTS

### I. FACTUAL BACKGROUND

On June 29, 2003, while on duty as a personal support counselor, Lois Nelson sat down in a patio chair that then collapsed. She fell onto a cement floor, jarring her back and striking her right ear. Her pain from the fall increased, and she took two weeks off work. When she returned to work on July 11, her pain intensified, and so she remained off work.

Nelson returned to work in August, but only briefly before turning to the Department for assistance.[1] On August 19, Nelson filed a claim with the Department for benefits available under the Industrial Insurance Act[2] (IIA). On August 27, the Department allowed the claim, paying Nelson time-loss benefits[3] starting August 22.[4]

---

[1] The record does not clearly delineate Nelson's work history between her fall in 2003 and her death in 2006. To begin with, Dr. H. Richard Johnson testified on direct examination that Nelson's employer disciplined her on August 10, 2003, for falling asleep on the job (an effect of the Vicodin that Nelson was taking at the time). On cross-examination, however, Johnson confirmed that Nelson had been fired for sleeping on the job. Yet Johnson also testified on direct that Nelson returned to work on September 7, 2003. Johnson does not clarify when Nelson was fired or to which job she returned in September.

The reasonable assumption seems to be that Nelson was unemployed for most of the period between her fall and her death. The record shows that Nelson received time-loss benefits for large portions of that period, meaning that the Department would have considered her temporarily totally disabled and thus incapable of any gainful, full-time employment. *See* RCW 51.32.090. Furthermore, scattered throughout the record are statements by both medical and vocational professionals, and Nelson herself, regarding matters like Nelson *remaining off* or *returning to* work that implied Nelson was not working.

[2] Title 51 RCW.

[3] Time-loss benefits are paid to workers who are temporarily but totally disabled because of an industrial injury to compensate them for their lost earning power. *See* RCW 51.32.090.

Nelson visited Community Health Care in July and Fife MultiCare Healthworks in August for treatment. These were the first in a long line of treatments Nelson received over the next few years as a result of her fall from the patio chair. This fall contributed to numerous health problems for Nelson, which compounded the effects of preexisting conditions she had. After her fall, Nelson was diagnosed with several back problems and mental disorders, including degenerative disc disease and depressive disorder. Her treatment for these various conditions ranged from prescription medication like morphine and Effexor to physical therapy to placement in an extended-care facility for about a month. In addition to medical care, Nelson also received vocational services during this time, including ability-to-work assessments in March 2005 and July 2006.

On August 3, 2006, only a little over a week after moving to Las Vegas to be closer to family, Nelson—then 57 years old—died of a drug overdose, which included morphine, methadone, and cocaine. At the time of her death, Nelson was still receiving time-loss benefits. After Nelson's death, the Department issued an order dated July 3, 2007, finding Nelson permanently totally disabled as of the day she died as a result of the injuries she sustained from her fall in 2003. Finding no qualified beneficiaries under the IIA, the Department closed Nelson's claim without making any award for her permanent total disability.

---

[4] This was not Nelson's first claim with the Department. On April 28, 2001, Nelson suffered injuries to her neck, left arm, and low back when a tall man had a seizure and fell on her while she was accompanying a client at a bank. Nelson opened a claim for industrial-injury benefits with the Department, receiving medical treatment and some time-loss benefits. Eventually, after an independent medical evaluation of Nelson, two doctors released her to return to work without restriction, and the Department closed her claim in February 2002. Nelson applied to reopen this claim in May 2004 on grounds that the condition had worsened, but the Department denied the application.

## II.    PROCEDURAL BACKGROUND

In August 2007, the Estate requested that the Department reconsider its order finding Nelson permanently totally disabled at the time of her death. But the Department affirmed the order days later.

The Estate appealed the Department's order to the Board in October 2007, claiming that Nelson was entitled to an award for permanent partial disability for her low back and mental health conditions. The Board granted the appeal. After a hearing, an industrial appeals judge issued a proposed decision and order in October 2008, affirming the Department's order. The Estate petitioned the Board for review. The Board granted the petition. The Board issued its final decision and order in January 2009, likewise affirming the Department's order.

The Estate appealed the Board's final order to Pierce County Superior Court in February 2009. After a bench trial, the court affirmed the Board's final order in July 2011. The Estate timely appeals.

## ANALYSIS

### I.    THE TRIAL COURT'S CONCLUSION THAT NELSON WAS PERMANENTLY TOTALLY DISABLED FLOWS FROM ITS UNCHALLENGED FINDINGS

Normally, our review in a workers' compensation case is limited to examining the record to see whether substantial evidence supports the findings of fact the superior court made after its de novo review of the case, and whether the superior court's conclusions of law flow from these findings. *Ruse v. Dep't of Labor & Indus.*, 138 Wn.2d 1, 5, 977 P.2d 570 (1999) (quoting *Young v. Dep't of Labor & Indus.*, 81 Wn. App. 123, 128, 913 P.2d 402 (1996)). But the Estate has not assigned any error to the trial court's findings of fact, making them verities on appeal. *Stone v. Dep't of Labor & Indus.*, 172 Wn. App. 256, 260, 289 P.3d 720 (2012). Thus, our review here is

limited to a de novo review of whether the superior court's conclusions flow from its findings. *Rogers v. Dep't of Labor & Indus.*, 151 Wn. App. 174, 180, 210 P.3d 355 (2009).

The Estate and the Department dispute whether substantial evidence supports the superior court's conclusion that Nelson was permanently totally disabled at the time of her death. We decline the parties' invitation to reconsider the evidence because the superior court's conclusion that Nelson was permanently totally disabled flows directly and necessarily from unchallenged finding of fact 1.8, which states that, at the time of her death, "Nelson was permanently precluded from obtaining or performing reasonably continuous gainful employment in the competitive labor market, as a proximate result [of] the June 29, 2003 industrial injury, when considered in conjunction with her . . . preexisting disabling medical conditions."[5] Clerk's Papers (CP) at 131. Therefore, we affirm the trial court's conclusion that Nelson was permanently totally disabled.

II. THE DEPARTMENT'S FINDING THAT NELSON WAS PERMANENTLY PARTIALLY DISABLED DOES NOT RESULT IN AN AWARD

Both sides agree that the Estate is not directly entitled to any benefits that flow from the conclusion that Nelson was permanently totally disabled. But the Estate argues that other circumstances in this case support an award: (1) The Department also found Nelson to be permanently partially disabled, (2) no double recovery would occur if the Department were to pay the Estate for Nelson's permanent partial disability, and (3) the timing of the Department's findings denied Nelson—and consequently her Estate—benefits, contrary to the IIA's purpose. Even assuming the finding of permanent partial disability applied to Nelson as a worker under

---

[5] "'Permanent total disability' means loss of both legs, or arms, or one leg and one arm, total loss of eyesight, paralysis or other condition *permanently incapacitating the worker from performing any work at any gainful occupation.*" RCW 51.08.160 (emphasis added).

the IIA, the Estate's claims fail because a worker who is permanently totally disabled has no right to receive a permanent partial disability award for an injury factored into the finding of that worker's permanent total disability. *See Stone*, 172 Wn. App. at 258. Furthermore, the timing of the Department's decisions here did not affect Nelson's or the Estate's eligibility for benefits.

A.     A Finding of Permanent Total Disability Based in Part on a Particular Injury
       Precludes an Award for a Permanent Partial Disability Based on That Same Injury

The superior court adopted as its own the Board's finding of fact 1, which acknowledged that after Nelson's death the Department also found Nelson permanently partially disabled[6] as a result of her 2003 industrial injury.[7] The Department, however, emphasizes that it issued this finding only for calculating Nelson's employer's insurance costs.[8] The Department did not send the order detailing this finding to Nelson or her Estate; thus, the finding was not final with

---

[6] "'Permanent partial disability' means the loss of either one foot, one leg, one hand, one arm, one eye, one or more fingers, one or more toes, any dislocation where ligaments were severed where repair is not complete, or any other injury known in surgery to be permanent partial disability." RCW 51.08.150.

[7] The relevant part of the Board's finding of fact 1 read:

> On July 5, 2007, the Department determined that the worker had been placed on a pension; permanent and total disability resulted because the injury or disease was superimposed on prior disabling conditions; the permanent partial disability resulting from this injury was a Category 2 lumbosacral impairment, $7,455.81; the employer's cost experience would be charged with that sum; and the balance of the pension reserve would be charged against the Second Injury Fund.

CP at 3.

[8] The Department explains that it issued this order as a technicality because it was required under RCW 51.16.120 "to follow the second-injury fund statute and calculate her level of pre-existing disability for the sole purpose of addressing the employer's experience rating" for purposes of determining the employer's industrial insurance premiums. Br. of Resp't at 37.

6

respect to Nelson or her Estate.[9] Even assuming, however, that this finding of permanent partial disability applied to Nelson under the IIA for purposes of compensation, the finding that Nelson was permanently totally disabled as a result of her 2003 industrial injury forecloses any award for the permanent partial disability.

Division One recently considered whether a worker may receive an award for a permanent partial disability where the injury giving rise to such a disability is factored into the finding that the worker is permanently totally disabled. In *Stone v. Department of Labor and Industries*, the Department found the worker permanently totally disabled because of the combined effects of a knee injury, a separate back injury, and mental health conditions. 172 Wn. App. at 259. The worker argued that he should have received a permanent partial disability award for the knee injury despite this injury being a contributor to the permanent total disability finding. *Stone*, 172 Wn. App. at 259-60. The court disagreed, holding that the worker could not receive the permanent partial disability award when his permanent total disability was based in part on that knee injury. *Stone*, 172 Wn. App. at 271.

The same situation exists here. The Department found Nelson permanently totally disabled "as a proximate result of the June 29, 2003 industrial injury, when considered in conjunction with her . . . preexisting disabling medical conditions." CP at 131. Nonetheless, Nelson's Estate argues that it should receive an award for the permanent partial disability that was predicated on this same 2003 injury. But, given *Stone*'s holding, the Estate cannot receive

---

[9] The order notes that it was mailed only to Nelson's employer, not to Nelson or her Estate. Therefore, the order could have been final only with respect to the employer—the order states that "[t]his order becomes final 60 days from the date it is communicated to you [Nelson's employer only] unless you do one of the following: File a written request for reconsideration with the Department or file a written appeal with the Board of Industrial Insurance Appeals." Administrative Record Ex. 2.

this award because the injury on which it would be based also forms part of the basis for the finding that Nelson was permanently totally disabled. Because no award for the permanent partial disability is even available here, we do not need to address the issue of double recovery.

B.     The Timing of the Department's Findings Did Not Deny Nelson or Her Estate Benefits to Which They Are Entitled Under the IIA

The Estate insists that, contrary to the IIA's purpose of benefitting injured workers,[10] the timing of the Department's orders finding Nelson permanently disabled disadvantaged Nelson, and thus her Estate. But beyond allusions to the IIA's broad purposes, the Estate makes no legal argument why the Department could not posthumously make these findings; the Estate fails to specify any improper delay except to say that there is "no explanation" of the Department's failure to determine Nelson's type of permanent disability between June 2005 and August 2006. Br. of Appellant at 17. Moreover, nothing in the timing of the Department's actions appears untoward.

First, Nelson's receipt of time-loss benefits for her temporary total disability right up to her death precluded an earlier finding of permanent disability. *See Franks v. Dep't of Labor & Indus.*, 35 Wn.2d 763, 767, 215 P.2d 416 (1950) ("[A] claimant cannot at one and the same time be classified as temporarily totally disabled and permanently partially disabled."). Second, had Nelson wanted the Department to determine during this period whether she was permanently disabled, she could have made that request at any time. *See* RCW 51.32.055(2). Third, vocational counselor Amanda Boley was making her final assessment for the Department that Nelson was permanently totally disabled during the same month Nelson died, but Boley did not learn of Nelson's death until nearly two years later, only days before she testified in this case.

___

[10] *See* RCW 51.12.010.

8

We see nothing suspicious in the timing of the Department's actions. And we are not persuaded by the "what if" scenarios the Estate advances where we are told that Nelson or the Estate would have received benefits if the timing of events had differed. In actuality, consistent with the IIA's purpose of benefitting injured workers, the Department provided Nelson with medical and time-loss benefits after her injury in 2003. Furthermore, had Nelson had beneficiaries as defined under the IIA, the Department's permanent total disability finding here would have resulted in compensation, and these arguments would vanish. But we cannot conjure up beneficiaries or change the events of the past so that, under the law, additional compensation appears. We can only determine whether the Department acted properly in the actual circumstances, and we conclude that it did.

III.    THE ESTATE DID NOT ADDRESS UNPAID TEMPORARY TOTAL DISABILITY BENEFITS.

The Estate also assigns error to the trial court's conclusion that, in addition to there being no unpaid permanent partial disability benefits owed to Nelson, there were no unpaid temporary total disability benefits owed either. But in its briefing, the Estate does not identify the temporary total disability benefits that remain to be paid, much less argue why they should be paid. "We do not consider assignments of error unsupported by argument or authority." *Angelo v. Angelo*, 142 Wn. App. 622, 628 n.3, 175 P.3d 1096 (2008) (citing RAP 10.3(a)(6)). Therefore, we do not consider this issue.

IV.    ATTORNEY FEES

Finally, the Estate assigns error to the trial court's award of $200 in attorney fees to the Department. But the Estate does not advance any argument why this was error, and so we do not consider it. RAP 10.3(a)(6). The Estate also requests attorney fees under RCW 51.52.130 in the

42456-8-II

event we reverse or modify the superior court's order, or grant additional relief. Because we have not done so, we do not award the Estate those fees.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Penoyar, J.

We concur:

_____
Van Deren, J.P.T.

_____
Worswick, C.J.

10