# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

    Respondent,

    v.

BLAYNE MICHAEL PEREZ,

    Appellant.

)
)
)
)
)
)
)
)
)
)
)

No. 76902-2-I

DIVISION ONE

PUBLISHED OPINION

FILED: October 29, 2018

LEACH, J. — Blayne Perez appeals his conviction for possession of a controlled substance (heroin). He challenges the trial court's admission of heroin evidence found after his arrest for theft, claiming that the arrest was unlawful. He contends that the court cannot use the fellow officer rule to determine if the police had probable cause to arrest him, without a warrant, for theft as authorized by RCW 10.31.100. Alternatively, he challenges the sufficiency of the evidence supporting a number of the court's findings related to his arrest. But the plain language of the statute, stating that "an" officer must have probable cause to arrest the suspect, allows a court to use the fellow officer rule to determine the existence of probable cause. And substantial evidence supports the court's material findings, which in turn support the court's conclusion that the officers had probable cause to arrest Perez. We affirm.

FACTS

On December 14, 2016, dispatch advised Officer Kristopher Munoz that loss prevention officers at a nearby Target were "struggling" with a woman suspected of theft.[1] As Munoz approached the store entrance, an unidentified passerby pointed to a black vehicle pulling out of a parking stall and stated, "There goes the suspect's partner." She also stated that there was drug paraphernalia in the vehicle. Munoz used dispatch to inform other officers that another suspect may be in the vehicle described by the unidentified civilian. Munoz then handcuffed the female suspect later identified as Brandy Williams. From the time that Munoz arrived, it took him approximately 30 seconds to one minute to physically take Williams into custody. By this time, the unknown passerby had left.

As Munoz walked Williams to his patrol car, he talked with Target's loss prevention officer, Monico Valencia. Munoz "deal[s] with Mr. Valencia almost on a daily basis when [he's] working" because of the "high level of theft" at that Target. Valencia told Munoz that Williams arrived in a vehicle with two adult males, one of whom was later identified as Perez. Valencia identified the same vehicle as being involved in the theft that the passerby had identified. He stated that Perez and Williams entered the store separately but met inside. They took gift bags from inside the store and put merchandise in them. Perez stood at the entrance of the store with four unpaid items

---

[1] Perez challenges the trial court's finding that as loss prevention officers attempted to subdue Williams, there was "merchandise strewn at her feet." The State concedes that substantial evidence does not support the quoted portion of the court's finding. Although not material to this appeal, we note this inaccuracy for the sake of the record.

and watched Williams leave. When loss prevention officers confronted Williams, Perez discarded the items he was holding, left the store, and entered a black vehicle. Based on this information and the civilian's tip, Munoz suspected that Perez had either shoplifted or attempted to shoplift. After Munoz's conversation with Valencia, Munoz saw that an officer had detained the suspect vehicle in the parking lot.

Once Munoz secured Williams in his patrol car, he approached the suspect vehicle. By then, the officers who had stopped Perez had taken him into custody. All three passengers consented to Munoz's request to search the vehicle.[2] He found three "baggies" of narcotics in the vehicle. Two contained heroin. While in custody, Perez told Munoz that the heroin was his.

After a hearing, the court denied Perez's request to suppress this evidence. At a stipulated bench trial, the court found Perez guilty of possession of a controlled substance (heroin). Perez appeals.

## ANALYSIS

Perez challenges the constitutionality of his arrest. He offers two reasons why the police did not have probable cause to arrest him for theft. We reject his claims.

The Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution protect individuals' privacy rights. Both provisions prohibit a warrantless arrest, subject to limited, narrow exceptions.[3] To justify a warrantless arrest, the State must show that an exception to the warrant requirement

---

[2] Unchallenged findings are true on appeal. State v. Hill, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).
[3] State v. Garvin, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009).

- 3 -

applies.[4] One exception allows the police to arrest a person when they have probable cause to believe a crime is being committed.[5] "Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in a belief that an offense has been committed. Probable cause is not a technical inquiry."[6] This determination rests on "the totality of facts and circumstances within the officer's knowledge at the time of the arrest."[7]

### The Fellow Officer Rule

First, Perez contends that the police did not have probable cause to arrest him. He bases this claim on his argument that courts cannot use the fellow officer rule to determine the validity of arrests for nonfelony offenses authorized by RCW 10.31.100. We disagree.

Perez raises an issue of statutory construction. This court reviews issues of statutory interpretation de novo.[8]

Article I, section 7 of the Washington Constitution provides, "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." "Authority of law" includes authority granted by a constitutional statute.[9] RCW 10.31.100 describes when police officers have authority to arrest, without a warrant, individuals committing misdemeanors or gross misdemeanors: "A police officer may arrest a

---

[4] State v. Snapp, 174 Wn.2d 177, 188, 275 P.3d 289 (2012).
[5] State v. Grande, 164 Wn.2d 135, 141, 187 P.3d 248 (2008).
[6] State v. Terrovona, 105 Wn.2d 632, 643, 716 P.2d 295 (1986).
[7] State v. Fricks, 91 Wn.2d 391, 398, 588 P.2d 1328 (1979).
[8] State v. Sandholm, 184 Wn.2d 726, 736, 364 P.3d 87 (2015).
[9] State v. Reeder, 184 Wn.2d 805, 817, 365 P.3d 1243 (2015).

person without a warrant for committing a misdemeanor or gross misdemeanor only when the offense is committed in the presence of <u>an</u> officer, except as provided in subsections (1) through (11) of this section." (Emphasis added.) RCW 10.31.100(1) authorizes an individual's arrest for nonfelony theft offenses committed outside the officer's presence: "Any police officer having probable cause to believe that a person has committed or is committing a misdemeanor or gross misdemeanor, involving . . . the unlawful taking of property . . . , shall have the authority to arrest the person." Our Supreme Court has held that RCW 10.31.100(1) is constitutional.[10]

Here, the parties dispute the information a court can consider to decide whether an officer making a nonfelony theft arrest had probable cause to make the arrest. Perez asserts that the court may consider only the information known to the arresting officer. The State contends that the court may consider all information allowed by the fellow officer rule.

"The fellow officer rule, also known as the police team rule, allows a court to consider the cumulative knowledge of police officers in determining whether there was probable cause to arrest a suspect."[11] The arresting officer has probable cause to arrest a suspect when an officer directing or communicating with him has probable cause, regardless of whether he personally possesses sufficient information to constitute probable cause.[12]

---

[10] <u>State v. Walker</u>, 157 Wn.2d 307, 310, 138 P.3d 113 (2006).
[11] <u>State v. Bravo Ortega</u>, 177 Wn.2d 116, 126, 297 P.3d 57 (2013).
[12] <u>State v. Maesse</u>, 29 Wn. App. 642, 646-47, 629 P.2d 1349 (1981).

Perez relies on State v. Bravo Ortega[13] to support his claim that the fellow officer rule does not apply to arrests for nonfelony offenses authorized by RCW 10.31.100. In Bravo Ortega, our Supreme Court interpreted an earlier version of RCW 10.31.100.[14] This former statute stated, "A police officer may arrest a person without a warrant for committing a misdemeanor or gross misdemeanor only when the offense is committed in the presence of the officer . . . ."[15] In Bravo Ortega, an officer stationed on the second floor of a building witnessed Ortega participate in drug transactions. Believing that he had probable cause to arrest Ortega for drug-traffic loitering,[16] the officer radioed this information to other officers on the ground, who then arrested Ortega.[17] Our Supreme Court held that Ortega's arrest was unlawful because "[u]nder the plain language of the statute, only an officer who is present during the offense may arrest a suspect for a misdemeanor or a gross misdemeanor."[18]

To support its holding, the court applied a rule of statutory construction, expressio unius est exclusio alterius.[19] This means "'to express or include one thing implies the exclusion of another.'"[20] The court explained that RCW 10.31.100(7)[21]

---

[13] 177 Wn.2d 116, 297 P.3d 57 (2013).
[14] Bravo Ortega, 177 Wn.2d at 123-24.
[15] Bravo Ortega, 177 Wn.2d at 123-24 (alteration in original) (quoting former RCW 10.31.100 (1979)).
[16] Bravo Ortega, 177 Wn.2d at 121.
[17] Bravo Ortega, 177 Wn.2d at 121.
[18] Bravo Ortega, 177 Wn.2d at 124.
[19] Bravo Ortega, 177 Wn.2d at 124.
[20] Bravo Ortega, 177 Wn.2d at 124 (quoting BLACK'S LAW DICTIONARY 661 (9th ed. 2009)).
[21] The statutory provision the court examined in Bravo Ortega was RCW 10.31.100(6). In 2013, the legislature renumbered this provision as RCW 10.31.100(7). LAWS OF 2013, Reg. Sess., ch. 278 § 4. We use the current numeration.

provides express authority for an officer to rely on the request of another officer in making an arrest for a traffic infraction. It stated that this provision did not apply to drug-traffic loitering.[22] The court reasoned that the expressio unius est exclusio alterius doctrine supported its decision because RCW 10.31.100(7) expressly authorized an officer to rely on the request of another officer when making an arrest for a traffic infraction while the other subdivisions of RCW 10.31.100 authorizing warrantless arrests did not. The court concluded that this meant that the legislature intended for the fellow officer rule to apply only to arrests for traffic infractions.

Perez acknowledges that the amendment to RCW 10.31.100 removed the requirement that a nonfelony offense be committed in the presence of the arresting officer. But he maintains that the expressio unius est exclusio alterius doctrine still applies to this case. He claims that similar to the provision about drug-traffic loitering considered in Bravo Ortega, RCW 10.31.100(1), authorizing a warrantless arrest for a nonfelony theft offense, does not expressly authorize the arresting officer to rely on the request of another officer. He cites the principle that criminal statutes should be literally and strictly construed.[23] He also relies on the rule of lenity, which, in the face of statutory ambiguity, requires the court "to adopt the interpretation most favorable to the defendant."[24] We reject Perez's argument on two grounds.

First, Bravo Ortega does not apply because, unlike the situation there, RCW 10.31.100(1) specifically states that the requirement that the offense be committed in

---

[22] Bravo Ortega, 177 Wn.2d at 124.
[23] State v. Garcia, 179 Wn.2d 828, 837, 318 P.3d 266 (2014).
[24] State v. Gonzales Flores, 164 Wn.2d 1, 17, 186 P.3d 1038 (2008).

the presence of an officer does not apply to arrests for nonfelony theft offenses. RCW 10.31.100(1) authorizes "[a]ny police officer" with probable cause to arrest an individual for select nonfelony offenses, including theft. (Emphasis added.) The statute does not require that the arresting officer make the probable cause determination. And under the fellow officer rule, probable cause is established when an involved officer has probable cause even if the arresting officer does not personally have probable cause. Thus, the plain language of RCW 10.31.100(1) allows for application of the fellow officer rule to arrests for select nonfelony offenses, including the theft offense at issue here.

Even if Bravo Ortega were relevant, RCW 10.31.100 also permits application of the fellow officer rule. The doctrine of expressio unius est exclusio alterius is a canon of statutory construction that does not apply where, as here, the plain language of the statute is unambiguous. The purpose of interpreting a statute is to determine the legislature's intent.[25] The plain meaning of the statute is the "surest indication of legislative intent."[26] To determine the plain meaning of a provision, a court looks to the text of the statutory provision and "'the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.'"[27] An undefined term is "'given its plain and ordinary meaning unless a contrary legislative intent is indicated.'"[28] Only if the statute is ambiguous, meaning it is susceptible to more than

---

[25] State v. Ervin, 169 Wn.2d 815, 820, 239 P.3d 354 (2010).
[26] Ervin, 169 Wn.2d at 820.
[27] Ervin, 169 Wn.2d at 820 (quoting State v. Jacobs, 154 Wn.2d 596, 600, 115 P.3d 281 (2005)).
[28] Ervin, 169 Wn.2d at 820 (quoting Ravenscroft v. Wash. Water Power Co., 136 Wn.2d 911, 920-21, 969 P.2d 75 (1998)).

one reasonable interpretation, does a court use statutory construction, legislative history, and relevant case law to help discern legislative intent.[29]

In Bravo Ortega, our Supreme Court held that the plain language of former RCW 10.31.100 did not permit application of the fellow officer rule.[30] The court did not identify any ambiguous language. It used the doctrine of expressio unius est exclusio alterius only as additional support for its reasoning.[31] The plain language of the amended statute before this court is also unambiguous. It authorizes a police officer to conduct a warrantless arrest for a nonfelony "when the offense is committed in the presence of an officer."[32] "An officer" means any officer, whereas "the officer," used in the former statute, means the arresting officer. Thus, the plain language of RCW 10.31.100 allows a police officer to arrest a suspect for a nonfelony if any officer was present during the offense. Perez provides no persuasive explanation for how an officer authorized to arrest a person for a crime committed outside his presence could ever have probable cause without relying on the knowledge of others. The trial court correctly concluded that the fellow officer rule applies to arrests for nonfelony offenses authorized by RCW 10.31.100.

---

[29] Ervin, 169 Wn.2d at 820.
[30] Bravo Ortega, 177 Wn.2d at 123-24, 127.
[31] Bravo Ortega, 177 Wn.2d at 123-24.
[32] RCW 10.31.100 (emphasis added).

Sufficiency of the Evidence Supporting the Trial Court's Findings

Alternatively, Perez claims that even if the fellow officer rule applies, the police did not have probable cause to arrest him and substantial evidence does not support some of the trial court's contrary findings. We disagree.

An appellate court reviews challenged findings of fact on a motion to suppress for substantial evidence.[33] "Substantial evidence exists where there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding."[34] Unchallenged findings are true on appeal.[35] This court reviews de novo whether the trial court's conclusions of law flow from its findings.[36]

Perez challenges the sufficiency of the evidence supporting three of the trial court's findings. First, Perez challenges the court's finding that "Mr. Valencia informed [Munoz] he observed a male suspect, whom he later identified as the Defendant Blayne Perez, enter the Target store with the female suspect and conceal items in his clothing." He also challenges a similar finding stating, "When [Perez] saw [Williams] being detained he put down anything he had concealed and left the store." Perez asserts that no evidence supports that he concealed items in his clothing. Valencia testified that both Perez and Williams took gift bags from inside the store. Valencia stated that Williams concealed merchandise in her bag and Perez had "merchandise with him . . . and on him." Perez "discard[ed] the merchandise that he had selected as he

---

[33] Hill, 123 Wn.2d at 644.
[34] Hill, 123 Wn.2d at 644.
[35] Hill, 123 Wn.2d at 644.
[36] Nelson v. Dep't of Labor & Indus., 175 Wn. App. 718, 723, 308 P.3d 686 (2013).

- 10 -

s[aw loss prevention officers] apprehend[ ] Brandy and then exit[ed] the store." Although Valencia's testimony supports that Perez concealed items, it does not support that he did so in his clothing. But whether Perez concealed the items in his clothing or in a bag is immaterial. The material finding is that Perez concealed items. Valencia's testimony supports this.

Perez also challenges the court's finding that Valencia relayed to Munoz the information contained in the two abovementioned findings as they "walked out of the Target location." Perez claims that because Valencia did not testify that Valencia told Munoz that Perez concealed any items, no evidence supports this finding. Valencia testified that he told Munoz, "[Perez] had merchandise with him at one point." But Munoz testified that Valencia also told him that both Williams and Perez "were selecting items and placing them into bags." Munoz stated that Valencia told him that when Williams left the store, Perez "stood by at the entrance to the store with four unpaid items . . . . When she was confronted by loss prevention, Mr. Perez then got rid of the items that he had in his possession." Munoz's testimony that Valencia told him Perez placed items into bags is sufficient to support the finding that Valencia relayed to Munoz that Perez concealed items.

Perez next claims that because substantial evidence does not support the findings discussed above, the court's findings do not support three of its conclusions of law. But, substantial evidence supports the court's challenged findings as discussed above, and the court's findings support its conclusions.

First, Perez asserts that the court's findings do not support its conclusion that "[s]ufficient information was known by other law enforcement officials involved in the investigation to justify the detention of the Defendant for theft in the third degree as a principal and accomplice." The court found that an unidentified female civilian provided information about a male suspect involved in the theft and a related vehicle. Munoz identified this vehicle as a black Volkswagen parked in the lot outside of the store. He broadcast this information through his radio dispatch. Valencia identified the same black Volkswagen as being involved in the theft. And Valencia told Munoz that Perez and Williams entered the store together and that Perez concealed items and then discarded them after seeing loss prevention officers detain Williams. The court also found that Valencia relayed this information to Munoz as they walked out of Target before police stopped Perez's vehicle. These findings support the court's conclusion that based on Munoz's knowledge, the police had probable cause to believe that Perez committed theft.

Second, Perez challenges the court's conclusion stating, "The tip provided to Officer Munoz possessed [the] necessary indicia of reliability under the totality of the circumstances." He also takes issue with the following conclusion:

> The unknown informant[']s tip was corroborated by [Munoz's] observations and information provided by a known and named citizen informant. That information corroborated more than innocuous details. Therefore, the officer had sufficiently reliable information on which to detain the defendant based on probable cause to believe he committed the crime of theft.

He claims the unknown citizen's tip was not sufficiently trustworthy to contribute to a probable cause determination. Information an officer relies on to make his probable

- 12 -

cause determination must be "reasonably trustworthy."[37] Perez contends that Munoz did not have a basis for determining whether the tip was reasonably trustworthy because he knew nothing about the unidentified citizen or her source of knowledge. But Valencia corroborated the citizen's identification of a black Volkswagen as the involved vehicle. Munoz testified that he interacted with Valencia on almost a daily basis as a result of the frequency of thefts at that Target. Because Munoz had an established relationship with Valencia and Valencia corroborated the tip, under the totality of the circumstances, the tip was sufficiently reliable.

Perez also asserts that Valencia did not relay to Munoz more than innocuous details. "Innocuous objects that are equally consistent with lawful and unlawful conduct do not constitute probable cause."[38] Perez relies on the principle that "[m]ere knowledge or physical presence at the scene of a crime neither constitutes a crime nor will it support a charge of aiding and abetting a crime."[39] But, as discussed above, in addition to Perez being physically present with Williams in the store and observing that she was stealing, substantial evidence shows that Valencia relayed to Munoz that Perez concealed items and discarded those items when he saw loss prevention officers detain Williams. These details are not innocuous and support the trial court's conclusions.

Perez further claims that because the trial court did not include in its written findings that Perez concealed items in a bag, this court cannot consider this testimony in deciding whether the court's findings support its conclusion stated above. Perez also

---

[37] Terrovona, 105 Wn.2d at 643.
[38] State v. Neth, 165 Wn.2d 177, 185, 196 P.3d 658 (2008).
[39] State v. J-R Distribs., Inc., 82 Wn.2d 584, 593, 512 P.2d 1049 (1973).

contends that even if this court does consider that testimony, the fact that Perez put items in a bag is not an incriminating detail. Although the trial court found that Perez concealed items in his clothing, it stated in its oral findings that Perez and Williams "[e]ach selected and concealed items in bags." "An appellate court may consider a trial court's oral decision so long as it is not inconsistent with the trial court's written findings and conclusions."[40] Perez claims that the trial court's oral finding that Perez concealed items in a bag conflicts with its written finding that he concealed items in his clothing. Because substantial evidence does not support the finding that Perez concealed items in his clothing, this court does not consider it. And because it is possible for someone to conceal items in both his clothing and a bag, the trial court's oral and written findings do not conflict. The trial court's written finding does not require that this court exclude the trial court's oral finding from its review. And, as we noted, the material fact is that Perez concealed items, not where he concealed them.

Alternatively, Perez maintains that the fact that he put items in a bag is an innocuous detail that does not support his guilt. He contends that because customers commonly put items into bags they bring from home before paying for items at checkout, the fact that he put items into a bag was equally consistent with lawful conduct as it was with unlawful conduct. But Valencia testified that the bags were gift bags that Perez and Williams selected from the store. They were not reusable bags individuals bring from home. The trial court did not err in concluding that Valencia's testimony corroborated more than harmless details.

---

[40] State v. Kull, 155 Wn.2d 80, 88, 118 P.3d 307 (2005).

Last, Perez asserts that because police did not have probable cause to arrest him, the fruit of the poisonous tree doctrine requires suppression of any evidence that he possessed heroin. This doctrine requires the suppression of physical or verbal evidence resulting from an unconstitutional search or seizure.[41] But because the trial court did not err in concluding that the police had probable cause to arrest Perez for theft, the fruit of the poisonous tree doctrine does not apply.

## CONCLUSION

The plain language of RCW 10.31.100 allows for application of the fellow officer rule to warrantless arrests for nonfelony offenses. And RCW 10.31.100(1) permits application of the rule specifically to warrantless arrests for described nonfelony offenses, including theft, when the suspect commits the offense outside of the presence of an officer. Substantial evidence supports the court's material findings, which support its conclusion that the police had probable cause to arrest Perez for theft. We affirm.

_____

WE CONCUR:

_____          _____

---

[41] Wong Sun v. United States, 371 U.S. 471, 484-86, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963).