**IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON**

| | |
|---|---|
| In the Matter of the Marriage of: | No. 79532-5-I |
| TAYLOR K. SAMUEL, | DIVISION ONE |
| Respondent, | UNPUBLISHED OPINION |
| and | |
| DAVID T. PARKER, | |
| Appellant. | |

LEACH, J. — David Parker challenges a domestic violence protection order (DVPO) issued on behalf of his ex-wife, Taylor Samuel. He contends that Samuel's request for the DVPO renewal was untimely, that the court's decision not to hold an evidentiary hearing allowing him to cross-examine witnesses violated his right to due process, and that insufficient evidence supports the trial court's findings of domestic violence. He also challenges a temporary parenting plan as it relates to the DVPO and CR 11 sanctions.

The trial court evaluated Samuel's petition for renewal as a petition for a new DVPO. So, Parker's timeliness challenge fails. The trial court's review of the documentary evidence met the requirements for due process in these particular proceedings. Because the record contains substantial evidence of domestic violence, Parker's evidentiary challenge fails.

We decline to review Parker's challenge to the temporary parenting plan because it is not subject to review as a matter of right and it is untimely. His challenge to CR 11

Citations and pincites are based on the Westlaw online version of the cited material.

sanctions fails because he does not identify the orders he is challenging and provides no authority to support his claim.  We affirm.

## FACTS[1]

Taylor Samuel[2] and David Parker are the parents of O.P.[3] A final parenting plan entered December 2015 designated Samuel the primary residential parent and conditioned Parker's time with O.P. on his attendance and completion of "a STEP parenting class."  It also required him to "complete an anger management assessment and follow all treatment recommendations."

After a conflict over where O.P. would spend the 2016 Fourth of July holiday, Samuel requested a restraining order in Island County Superior Court.[4]  The court issued a restraining order and Parker complied.[5]

On August 1, 2016, the trial court ordered Parker to pay attorney fees Samuel incurred in connection with the restraining order. The trial court denied Parker's request that it reconsider this decision.[6]  Samuel requested additional fees.[7]  Parker missed the November hearing date for this request, and on November 14 the court awarded Samuel her requested attorney fees "[b]ased on intransigence and CR11."[8]

Parker appealed several trial court decisions involving the restraining order and

---

[1] This opinion draws in part on facts described in Parker v. Samuel, No. 76165-0-I, slip op. (Wash. Ct. App. April 23, 2018) (unpublished), http://www.courts.wa.gov/opinions/pdf/761650.pdf.

[2] Taylor Samuel changed her last name from Grant to Samuel when she married Quade Samuel.  For clarity, we refer to her as Taylor Samuel.

[3] Parker, No. 76165-0-I slip op. at 2.

[4] Parker, No. 76165-0-I slip op. at 4.

[5] Parker, No. 76165-0-I slip op. at 4.

[6] Parker, No. 76165-0-I slip op. at 5.

[7] Parker, No. 76165-0-I slip op. at 5.

[8] Parker, No. 76165-0-I slip op. at 5.

fee awards.[9]  In an unpublished decision, this court considered only the November 14 order awarding attorney fees because Parker's appeal was untimely with respect to the restraining order and the initial award of fees.[10]  We remanded for the trial court to enter sufficient findings of fact and conclusions of law to support its November 14 decision.[11]

The court entered a modified parenting plan in May 2017 when Samuel moved to California.  O.P visited her father in Seattle between June 17 and July 1, 2017.  Kassandra Sedillo, Parker's ex-girlfriend and the mother of a child she shares with Parker, lived with him at the time.

After returning to her mother's house, O.P. described fights between Sedillo and Parker that she saw or heard during her visit.  In response, on August 4 Samuel asked the court to enter a DVPO against Parker.  She also asked the court to modify the parenting plan and place limits on Parker because of his alleged history of domestic violence.  Both parties' attorneys appeared at a hearing on August 21, 2017.  The court denied Parker's request for an evidentiary hearing and granted his request for a continuance.

The court held a hearing on October 2, 2017.  Counsel for both parties appeared. The court decided to grant Samuel's requests.

Parker filed objections to Samuel's petition and proposed order.  The trial court set a hearing date for October 30, 2017.  The court continued the hearing until November 6, 2017.  On November 3, Parker's attorney emailed Samuel's attorney to tell her he would not attend the hearing but would rely upon his written objections.

---

[9] Parker, No. 76165-0-I slip op. at 6.
[10] Parker, No. 76165-0-I slip op. at 6.
[11] Parker, No. 76165-0-I slip op. at 7-8.

Only Samuel's attorney appeared at the November 6 hearing. The court entered Samuel's proposed orders. They included an order requiring Parker to pay $5,000 in attorney fees "based on petitioner's need and respondent's ability to pay as well as respondent's intransigence which includes respondent's failure to accurately provide information on the child's well[-]being to both the petitioner and the court." The court also entered a restraining order and a DVPO, which were both set to expire on December 31, 2018. It also entered a temporary parenting plan.

The temporary parenting plan adopted Samuel's proposed reasons for restricting Parker and proposed conditions for visitation and unmonitored contact with O.P. The plan restricted Parker, under RCW 26.09.191, because he or someone in his home "has a history of domestic violence as defined in RCW 26.50.010(1)" and Parker or someone in his home "has assaulted or sexually assaulted someone causing grievous physical harm or fear of such harm." The court also identified Parker's abusive use of conflict as a factor that may harm O.P.'s best interests. The court ordered Parker to be evaluated for domestic violence and anger management, conditioned his ability to speak on the phone with O.P., and directed no residential time without compliance of the provisions.

This court denied Parker's request for discretionary review of the trial court's November 6 decisions. The Washington Supreme Court also denied his motion for discretionary review.

In August 2018, Parker enrolled in a 12 week positive parenting/anger management course. In October 2018, Parker asked the trial court to restore the original parenting plan in effect before Samuel moved to San Diego since she was returning to live in Washington State. The court denied this request stating that it was "very clear" as

4

to what Parker had to do to get his visitation time with O.P. back and he had not done it, so "he's not entitled to return to Court to ask for visitation." It also imposed CR 11 sanctions because Parker exceeded the limit for length of declarations, and because it believed Parker and his attorney were attempting to wear Samuel down through financial abuse.

On November 9, 2018, Samuel asked the court to renew the DVPO. The court set a hearing for November 26, 2018. Parker filed an objection to renewal on November 29, 2018. He submitted a domestic violence assessment report on December 20, 2018. The report indicated that Parker has engaged in a history of "domestic violence with multiple partners" and raised concerns about his ability to be a consistently safe, reliable parent. It recommended "a level 3 D.S.H.S. certified domestic violence intervention program [with] a minimum of 12 months of weekly group sessions."

The trial court set a hearing for December 31, 2018 and entered an order extending the DVPO until that date. On January 2, 2019, the court entered a DVPO against Parker and filed a memorandum decision.

Parker appeals.

## ANALYSIS

Parker challenges the January 2, 2019 DVPO, the November 2017 temporary parenting plan, and the court's imposition of sanctions.[12]

---

[12] Parker filed his "corrected" opening brief, dropping some of his arguments, after Samuel filed her response. The response brief addresses issues that we do not address here, in particular Parker's request for judicial notice.

<u>DVPO Petition</u>

First, Parker contends that the trial court should have dismissed Samuel's petition for renewal as untimely. We disagree.

With chapter 26.50 RCW, the legislature expressed a clear public policy to protect domestic violence victims.[13] If the court grants a protection order against a person restraining him from contacting his minor children, "the restraint shall be for a fixed period not to exceed one year."[14] This court reviews the grant or denial of a protection order for abuse of discretion.[15] A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons.[16]

Once the court grants an order, "the petitioner may apply for renewal of the order by filing a petition for renewal at any time within the three months before the order expires."[17] The petitioner has the burden to establish grounds for a protection order when she petitions for an initial DVPO, but with a petition for renewal the burden shifts to the respondent to prove by a preponderance of the evidence that he will not resume acts of domestic violence when the initial order expires.[18] The initial DVPO stated that it expired on December 31, 2018, more than one year after the date the court entered it on November 6, 2017. Because of the one-year limit for this order, the protection order

---

[13] <u>In re Marriage of Freeman</u>, 169 Wn.2d 664, 671, 239 P.3d 557 (2010).
[14] RCW 26.50.060(2).
[15] <u>Freeman</u>, 169 Wn.2d at 671; <u>In re Marriage of Stewart</u>, 133 Wn. App. 545, 550, 137 P.3d 25 (2006); <u>In re Parentage of T.W.J.</u>, 193 Wn. App. 1, 6, 367 P.3d 607 (2016).
[16] <u>In re Marriage of Chandola</u>, 180 Wn.2d 632, 642, 327 P.3d 644 (2014).
[17] RCW 26.50.060(3).
[18] RCW 26.50.060(3) ("The court shall grant the petition for renewal unless the respondent proves by a preponderance of the evidence that the respondent will not resume acts of domestic violence against the petitioner or the petitioner's children or family or household members when the order expires."). <u>Freeman</u>, 169 Wn.2d at 672-73.

actually expired on November 6, 2018.[19]  The trial court recognized that the DVPO had expired and considered Samuel's submission to the court as a petition for a new DVPO. It reviewed the evidence provided by Samuel and concluded that she had met her burden of proof by showing a reasonable fear of future abuse.  The court did not shift the burden to Parker.  The court analyzed Samuel's renewal request as a new petition rather than a renewal.

Parker also contends that the trial court abused its discretion because Samuel did not include an affidavit with the petition for renewal.

RCW 26.50.030(1) requires a petitioner to attach an affidavit "stating the specific facts and circumstances from which relief is sought" when requesting an initial DVPO rather than petitioning to renew one.

In the petition for renewal, signed under penalty of perjury, Samuel stated that she wanted to renew the Order for Protection because:

> Mr. Parker has failed to comply with any of the evaluation/counseling requirement[]s in the Court's order. He continues to exhibit abusive and bullying behavior.  He has violated the orders repeatedly.  He has another protection order against him from another relationship.  Mr. Parker fails to acknowledge or address any of his actions which led to the entry of the protection orders.

In later filings, Samuel included a reply declaration identifying facts supporting her petition.

Parker did not ask the court to correct the wrong expiration date in the original order, and he fails to cite to any authority requiring the trial court to penalize a petitioner who follows the statute in good faith. We conclude that the trial court did not err by considering the petition for renewal as a petition for a new DVPO.

---

[19] RCW 26.50.060(3); Muma v. Muma, 115 Wn. App. 1, 7, 60 P.3d 592 (2002).

Parker also asserts that the DVPO "is void because it fails to comply with the requirements for a protection order set out in 26.50 RCW."

A judgment is void only when the court lacks jurisdiction over the parties or the subject matter, or lacks the inherent power to enter the particular order involved.[20] A judgment is voidable if the court has jurisdiction, and if the order is the result of mistakes or procedural irregularities.[21] Generally, CR 60(b) governs the process for vacating voidable orders.

Parker does not cite to facts nor does he provide legal authority to support his contention.[22] So, it fails.

### Evidence of Domestic Violence

Parker challenges the sufficiency of the evidence to support the court's DVPO decision. He challenges one finding of fact and more generally claims that the trial court "erred in finding that Samuel, herself, was the victim of domestic violence." His challenge to the findings fails.

This court reviews the record to decide whether substantial evidence supports a trial court's findings of fact.[23] Substantial evidence exists when the record includes enough evidence to persuade a fair-minded, rational person of the truth of the finding.[24] "Appellate courts do not hear or weigh evidence, find facts, or substitute their opinions for

---

[20] Bresolin v. Morris, 86 Wn.2d 241, 245, 543 P.2d 325 (1975).

[21] In re Marriage of Mu Chai, 122 Wn. App. 247, 254, 93 P.3d 936 (2004).

[22] RAP 10.3(a)(6); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

[23] Panorama Vill. Homeowners Ass'n v. Golden Rule Roofing, Inc., 102 Wn. App. 422, 425, 10 P.3d 417 (2000).

[24] In re Marriage of Spreen, 107 Wn. App. 341, 346, 28 P.3d 769 (2001) (citing Bering v. SHARE, 106 Wn.2d 212, 220, 721 P.2d 918 (1986).

those of the trier-of-fact."[25]  An appellate court accepts unchallenged findings as true on appeal.[26]

RCW 26.50.020(1)(a) states, "Any person may seek relief under this chapter by filing a petition with a court alleging that the person has been the victim of domestic violence committed by the respondent. The person may petition for relief on behalf of himself or herself and on behalf of minor family or household members."  "Domestic violence" includes "[p]hysical harm, bodily injury, assault or the infliction of fear of imminent physical harm, bodily injury or assault, sexual assault, or stalking" of a former spouse or of a "family or household member", including a child.[27]  In children, domestic violence includes the psychological impact of a child witnessing domestic violence against others.[28]  In domestic violence proceedings under chapter 26.50 RCW, the court need not strictly follow the rules of evidence, including hearsay rules.[29]  In an application for a DVPO renewal, the petitioner need not provide evidence of a more recent act of domestic violence beyond that which she showed in support of her initial petition.[30]

Parker assigns error to the finding of fact stating that Parker pushed Sedillo down the stairs in view of O.P.  Samuel, in her declaration submitted with her initial petition for a DVPO, reported that O.P. described Parker pushing Sedillo down the stairs.  So, this

---

[25] Quinn v. Cherry Lane Auto Plaza, Inc., 153 Wn. App. 710, 717, 225 P.3d 266 (2009) (citing Thorndike v. Hesperian Orchards, Inc., 54 Wn.2d 570, 572, 343 P.2d 183 (1959).
[26] Nelson v. Washington State Dep't. of Labor & Indus., 175 Wn. App. 718, 723, 308 P.3d 686 (2013).
[27] RCW 26.50.010(3).
[28] In re Marriage of Stewart, 133 Wn. App. 545, 550-51, 137 P.3d 25 (2006).
[29] ER 1101(c)(3).
[30] Barber v. Barber, 136 Wn. App. 512, 514-15, 150 P.3d 124 (2007); Spence v. Kaminski, 103 Wn. App. 325, 334-35, 12 P.3d 1030 (2000).

declaration provides substantial evidence for this finding.

Parker also asserts that the trial court erred in determining more generally that he committed domestic violence.

Parker does not assign error to the following findings from the trial court's memorandum opinion that supported its decision to issue the DVPO:

1.  The respondent continues to be abusive and bullying, as shown by his texts;

2.  The respondent has exhibited the same behavior as in this case with at least three other women, resulting in protection orders in Island County and in King County;

3.  The respondent's failure to acknowledge or address any of his actions by following the requirements for evaluation, treatment, and disclosure;

4.  The respondent's continued arguments on the same facts, despite the denial of discretionary review in the Court of Appeals and the Supreme Court;

5.  The petitioner's reasonable belief that the respondent is attempting to track her and her daughter and where they are living.

Because he does not challenge these findings, we accept them as true.[31] Apart from these findings, the evidence Samuel submitted in connection with her petition for renewal also supports the court's determination that Parker committed domestic violence. Samuel was concerned that the watch Parker gave O.P. might have GPS tracking capabilities. She provided examples of texts such as, "How about you stop holding O. hostage in your ridiculously immature victim game and finally let her see her dad" that undermined his assertions that he wished to "make amends" with her. She also said that Parker recorded his Facetime call with their daughter without her permission. And, she said "[h]e has demanded to know where I will be living" and asked O.P. to "walk around

---

[31] Nelson, 175 Wn. App. at 723.

[Samuel's] house and show it to him." Finally, she noted, rather than immediately complying with the court's order to get a domestic violence evaluation with an approved provider, he filed for discretionary review with this court and the Washington Supreme Court.

The evidence supports the court's determination that Parker's behavior raised a fear of "imminent physical harm, bodily injury or assault, sexual assault, or stalking" in Samuel and O.P.[32] The court did not err in finding Parker committed domestic violence.

Parker also attacks Sedillo's credibility. But, this court does not make credibility determinations, so this challenge does do not help him.[33]

Due Process

Parker contends that the trial court violated his right of due process by entering the DVPO without allowing him to cross-examine witnesses.

The Washington and federal constitutions guarantee that a procedure must comply with due process before a person's fundamental liberty interest may be restrained.[34] "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"[35] This court reviews a party's denial of due process claim de novo.[36]

A court's decision to issue a DVPO restricting a parent's access to his child implicates a person's fundamental liberty interest in his ability to determine the care,

---

[32] RCW 26.50.010(3).
[33] In re Marriage of Rideout, 150 Wn.2d 337, 351-52, 77 P.3d 1174 (2003).
[34] Wash. Const. art. I, § 3; U.S. Const. amend. XIV, § 1.
[35] Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L. Ed. 2d 62 (1965).
[36] Smith v. Smith, 1 Wn. App. 2d 122, 142, 404 P.3d 101 (2017).

custody, and control of his child.[37]  Washington case law does not require a trial court to allow live testimony or cross-examination in every protective order proceeding under 26.50 RCW.[38]  Instead, when considering a challenge to a DVPO proceeding on due process grounds, the trial court should apply the balancing test identified in Mathews v. Eldridge[39] to the facts of the case.[40]

These factors are:

(1) the private interest impacted by the government action, (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) the government interest, including the additional burden that added procedural safeguards would entail.[41]

The first factor supports Parker's claim because he has a liberty interest in the care and control of his child.[42]  But, the harm to this interest is reduced somewhat because the DVPO only restrains him from contact for a year.[43]  Because the government has a compelling interest in preventing domestic violence and protecting children, the third factor weighs against Parker's claim.[44]

The second factor does not require a hearing. Even when a fundamental liberty interest as physical liberty is at stake, the United States Supreme Court found that substitutes for live testimony such as affidavits, depositions, and documentary evidence

---

[37] Troxel v. Granville, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000).
[38] Aiken v. Aiken, 187 Wn. 2d 491, 503-506, 387 P.3d 680 (2017).
[39] 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).
[40] Aiken, 187 Wn.2d at 503-06.
[41] Aiken, 187 Wn.2d at 502 (quoting Mathews, 424 U.S. at 335).
[42] Gourley, 158 Wn.2d 460, 468, 145 P.3d 1185 (2006) (citing Troxel v. Granville, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L. Ed. 2d 49 (2000).
[43] Gourley, 158 Wn.2d at 468; Mathews, 424 U.S. at 341 (quoting Fusari v. Steinberg, 419 U.S. 379, 389, 95 S.Ct. 533, 42 L. Ed. 2d 521 (1975).
[44] Aiken, 187 Wn.2d at 502; In re Dependency of H.W., 70 Wn. App. 552, 555, 854 P.2d 1100 (1993).

may be sufficient. This court and the Washington Supreme Court have repeatedly concluded that live testimony and cross-examination are not always required in DVPO proceedings.[45]

Parker contends that courts are improperly citing the Gourley and Aiken decisions "in order to foreclose due process rights in nearly all domestic violence proceedings." He cites to no case law other than reiterating the language of the Aiken opinion to support this contention. Both Aiken and Gourley emphasize that a lower court need not provide the opportunity for live testimony but that it is appropriate for the court to weigh the Mathews factors and then make a decision.[46]

Parker contends that RCW 26.09.191(2) requires the court to structure "residential and visitation rights to allow parental contact where consistent with the welfare of the child." Chapter 26.09 RCW involves dissolution proceedings including the creation of parenting plans. In situations where domestic violence is asserted, the trial court must weigh factors described in RCW 26.09.191 when determining a parent's control of, and contact with, a child. RCW 26.09.191 requires that the court make an evaluation of what is in the best interest of the child.[47]

RCW 26.09.191 does not govern the court's analysis under chapter 26.50 RCW. Apart from his bold assertion that chapter 26.50 RCW also requires "structuring residential and visitation rights to allow parental contact where consistent with [the] welfare of the child," Parker does not provide an argument with legal authority and

---

[45] Aiken, 187 Wn. 2d at 503; Gourley, 158 Wn.2d at 468; Smith, 1 Wn. App. 2d at 142.
[46] Aiken, 187 Wn. 2d at 503; Gourley, 158 Wn.2d at 468.
[47] RCW 26.09.191(3).

citations to the record to support his claim. So, we decline to consider it.[48]

Because the Mathews factors weigh against Parker's claim, the trial court did not deny Parker due process by basing its decision upon the declarations and other submitted documentary evidence.

### Challenge to the Temporary Parenting Plan

Parker challenges the November 2017 temporary parenting plan as it relates to the court's decision to issue the second DVPO. A temporary parenting plan is an interlocutory order and is not appealable as a matter of right.[49] And, Parker's appeal of the temporary parenting plan is untimely.[50] While the court did consider Parker's failure to comply with the conditions of the temporary parenting plan when it entered the DVPO, the court's decision did not rely on this failure. It relied on the following findings, which as discussed above, we accept as true.

1. The respondent continues to be abusive and bullying, as shown by his texts;

2. The respondent has exhibited the same behavior as in this case with at least three other women, resulting in protection orders in Island County and in King County;

3. The respondent's failure to acknowledge or address any of his actions by following the requirements for evaluation, treatment, and disclosure;

4. The respondent's continued arguments on the same facts, despite the denial of discretionary review in the Court of Appeals and the Supreme Court;

5. The petitioner's reasonable belief that the respondent is attempting to track her and her daughter and where they are living.

---

[48] Beal v. City of Seattle, 134 Wn.2d 769, 777, 954 P.2d 237 (1998); Palmer v. Jensen, 81 Wn. App. 148, 153, 913 P.2d 413 (1996).
[49] Williams v. Williams, 156 Wn. App. 22, 29, 232 P.3d 572 (2010).
[50] RAP 5.2(a)(b).

None of these findings rely upon the substance of the temporary parenting plan, and as discussed above, they support the court's decision to issue the DVPO. We reject Parker's contention that the issues in the DVPO and temporary parenting plan are sufficiently intertwined to allow him to challenge the plan via his challenge to the DVPO.

## Sanctions and Attorney Fees

Both parties raise issues related to sanctions and attorney fees.

First, Parker broadly challenges the trial court's imposition of sanctions. This court reviews the imposition of CR 11 sanctions for abuse of discretion.[51] A court may award CR 11 sanctions against the attorney or party for filing a baseless pleading, motion, or legal memorandum.[52]

Parker asks this court "to rule as a matter of law that a litigant can challenge an interpretation of a legal doctrine that he contends violates the Due Process clause of the Fourteenth Amendment and to rule that those seeking to advance meritorious claims should not be chilled by the baseless threat of monetary sanctions." Parker analogizes the court's sanctions here to what might have happened had the courts in Brown v. Board of Education[53] sanctioned Thurgood Marshall. But, Parker fails to provide evidence, an argument, a description of which orders he is challenging, or a citation to authority.[54] So, we decline to review this claim.

Second, Samuel asks this court award her attorney fees under RAP 18.1.

---

[51] Stiles v. Kearney, 168 Wn. App. 250, 260, 277 P.3d 9 (2012).
[52] CR 11(a).
[53] 347 U.S. 483, 494, 74 S.Ct. 686, 98 L. Ed. 873 (1954).
[54] Brown v. Board of Education does not provide authority. It does not involve sanctions. This, of course, is Parker's point. This also means Brown v. Board of Education does not support his position.

RAP 18.1 allows a reviewing court to award a party reasonable attorney fees if the party makes its request as RAP 18.1 provides and if applicable law grants a party the right to recover them.

Samuel requests fees under RCW 26.09.140 based on need and ability to pay. Under RCW 26.09.140, an "appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorney's fees in addition to statutory costs" for appeals raised under chapter 26.09 RCW.[55] Both parties submitted financial declarations.[56] Based on these declarations, Samuel does not establish Parker's ability to pay.[57] So, we exercise our discretion and decline to award attorney fees on this basis.

Samuel also requests fees under RAP 18.9(a).

RAP 18.9(a) permits an appellate court to award a party attorney fees when the opposing party files a frivolous action. "An appeal is frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ, and that the appeal is so devoid of merit that there is no possibility of reversal."[58] A court may order both a party and an attorney to be jointly and severally liable for fees.[59]

---

[55] RCW 26.09.140.

[56] Samuel filed her declaration on January 7, 2020 and Parker submitted his on January 21, 2020.

[57] We deny Samuel's motion to strike untimely pleadings filed by Parker addressing the attorney fee requests.

[58] Advocates for Responsible Dev. v. W. Washington Growth Mgmt. Hearings Bd., 170 Wn.2d 577, 580, 245 P.3d 764, 765 (2010).

[59] Wixom v. Wixom, 190 Wn. App. 719, 728, 360 P. 3d. 960 (2015).

Samuel asserts that Parker's actions justify an award under RAP 18.9(a) because he misleadingly represented the record and violated RAP 10.3(a)[60] and because he continued to make arguments in this case that appellate courts rejected. Because we conclude that Parker's actions before this court do not support sanctions, we decline to award fees under RAP 18.9(a).

## CONCLUSION

We affirm. Parker's untimeliness challenge fails because the trial court evaluated the petition for renewal as a petition for a new DVPO. And, because the trial court's review of the documentary evidence met the requirements for due process in these particular proceedings, Parker's due process claim fails. Finally, the record contained substantial evidence of domestic violence.

Parker's challenge to the temporary parenting plan is an untimely attack on an interlocutory order that he cannot appeal as a matter of right. Parker does not provide this court with adequate citations to the record or legal authority to allow review of his request that this court hold that no sanctions be awarded in any case where a plaintiff challenges a proceeding for a violation of due process. Because Samuel fails to establish

---

[60] Samuel cites to App. A, B, and C but did not provide appendices or citations for these orders. Samuel also claims that Parker asks this court inappropriately to take judicial notice of particular materials. He did so in his initial brief but did not in his corrected brief, which was submitted after Parker's response.

that Parker has the ability to pay, or that this appeal was frivolous, we decline to award attorney fees.

WE CONCUR

_____ Leach, J.

_____

_____