

**FILED**
**FEBRUARY 25, 2025**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| FIVE STAR GUTTERING, LLC, ET AL | ) | |
| | ) | No. 40138-3-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| WASHINGTON, DEPARTMENT OF | ) | |
| LABOR & INDUSTRIES, | ) | |
| | ) | |
| Respondent. | ) | |

FEARING, J. — Five Star Guttering, LLC (Five Star), a gutter contractor as its name suggests, and Oscar Curiel, the owner of the company, appeal a Department of Labor & Industries (DLI) award of back wages owed to Marcelina Torres. Torres, the former girlfriend of Curiel, performed services for the company when it began operations in 2017 until 2019. Five Star contends it entered into no employment relationship with Torres. On appeal, Curiel and Five Star challenge the findings of fact and conclusions of law entered by the DLI during its administrative hearing process. Because substantial evidence supports all of the critical findings of fact and those findings support the conclusions of law, we affirm.

FACTS

We draw the following narrative from testimony before the DLI administrative law judge (ALJ) and from unchallenged findings of fact. We view the facts in the light most favorable to the prevailing party, respondent DLI.

In 2007, Oscar Curiel and Marcelina Torres began a romantic relationship and three years later begat a son. The couple lived together for an unidentified length of time, but briefly, after the son's birth. Torres later resided with her parents. She became the primary custodian for the son.

In 2017, Oscar Curiel and Marcelina Torres became engaged and decided to start a construction business, Five Star, but not necessarily in that priority. Curiel was employed by Hayden Masonry, and Torres worked as a State Farm Insurance Company sales agent. Curiel charged Torres' credit cards to pay the startup costs of Five Star. Torres' cards purchased a gutter forming machine, tools, computer software, software applications, Facebook ads, promotional items, and business lunches.

Oscar Curiel owns and operates Five Star and serves as its registered agent. Curiel promised to reimburse Marcelina Torres for the costs of starting the business. Torres used her savings to retire the resulting credit card debt.

On May 29, 2017, Marcelina Torres quit her job with State Farm to work full-time for Five Star. Her tasks included procuring contractor bonds, insurance, and a license for

the business.  Torres created and produced promotional brochures and swag, including pens and water bottles with a logo she designed.  She distributed marketing materials at local companies and parades.  She walked door-to-door and collected potential customers' names.  She commenced and managed social media accounts to promote the company.  She posted promotional videos and job site photos on Instagram and Facebook and solicited feedback and reviews of company projects.  By mid-summer 2017, Torres attended business networking meetings, meetings with prospective customers, scheduling estimates, measuring homes, and arranging installations.

At some unidentified time but shortly after Five Star began operations, Oscar Curiel and Marcelina Torres ended their marriage engagement.  They continued with a romantic relationship, however.

Oscar Curiel paid $2,000 every three to four months to Marcelina Torres.  Torres considered the payments as reimbursement for the debt incurred in Five Star's startup costs and for court-ordered child support obligations rather than compensation.  According to Torres, she informed Curiel that the payments failed to cover the business debt, child support, and compensation for her employment.  Curiel denies being told of any expectation of receiving wages.  Curiel deemed the payments sufficient for Torres' assistance to his business, Five Star.

Five Star, through Oscar Curiel, did not view Marcelina Torres as an employee and kept no records of her hours worked. Curiel never requested that Torres complete a W-2 or a 1099 form, and he withheld no taxes from any payments to her. In late 2017, Curiel hired Eric Glascow of Insight Accounting to manage the business's bookkeeping and accounting. Glascow believed Five Star should place Torres on its payroll because she performed extensive administrative duties such as customer scheduling, advertising, and all customer contact. Later, Scott Alan Williams assumed the business' accounting duties. Williams never saw any written salary agreement for Torres. He received no timecards from Torres for hours worked. Like Glascow, Williams believed that Five Star should add Torres to its payroll.

On December 1, 2018, Marcelina Torres informed Oscar Curiel that she intended to quit working for Five Star. She resigned on February 8, 2019. Her resignation email to Curiel reads, in part:

> I am giving you my immediate resignation since I have not been compensated adequately for the amount of work that I have performed for 5 Star Guttering. I had been receiving an amount in cash for the last few years of $2000 (sometimes) that according to you should have covered all my expenses including rent, bills and raising an 8 year old all on my own.

Clerk's Papers (CP) at 182 (emphasis omitted). Torres and Curiel's romantic relationship also ended.

4

On March 30, 2019, Marcelina Torres filed a worker rights complaint with DLI and against Five Star for withheld wages throughout her employment. DLI Industrial Relations Agent Yocelin Martinez investigated the complaint. Torres claimed she was an hourly employee at $16 per hour, plus a 10% commission. Torres submitted, to Agent Martinez, timecards, tracked with "Time Card Calculator Geek," covering the period from May 29, 2017, to February 10, 2019. Torres also tendered social media posts documenting her work activities for Five Star and copies of estimates created for prospective customers. The estimates mentioned a 10 percent commission. After collecting additional information from other parties, Agent Martinez calculated that Five Star owed Torres $129,357.04 in wages.

On April 23, 2020, Agent Yocelin Martinez, on behalf of DLI, sent Five Star a request for a response to Marcelina Torres' wage complaint. Agent Martinez followed with a letter asking for business records or other documents that would demonstrate that Torres was not an employee or that Five Star owed no wages.

On May 13, 2020, Five Star responded:

> Regarding Time Records: the agreement with Marcelina Torres was never to have actual payroll. We were in a relationship, shared a child, and she was performing business tasks under the assumption that it was helping the functionality of our households, and miscellaneous other charges such as her credit card bill.
> . . . .
> There was no written contract with Marcelina, no employee paperwork ever discussed, completed or obtained.

5

CP at 468-69. Five Star provided no paystubs or any records of Marcelina Torres's employment or work.

At the later DLI hearing, Oscar Curiel presented his Numerica credit card statements, which showed various cash withdrawals. Curiel then claimed that Five Star paid Torres in cash for all her work. The statements, however, did not identify Torres as the recipient of the withdrawals. Torres signed no receipts for these purported payments. Upon completing her investigation, DLI Agent Yocelin Martinez concluded that an employer/employee relationship existed between Five Star and Torres with no records showing compensation.

On May 20, 2020, DLI notified Five Star that it owed Marcelina Torres $96,911.43 for work performed between May 29, 2017 and February 8, 2019. Due to the absence of a formal wage agreement between Five Star and Torres, DLI based the assessed amount on the minimum wage.

PROCEDURE

On July 9, 2020, DLI issued a citation and notice of assessment to Five Star and Oscar Curiel individually for $98,078.64 in wages owed Marcelina Torres, $17,291.72 in interest, and a penalty of $9,807.86. DLI assessed the total sum of $125,178.22. On August 5, 2020, Five Star and Curiel appealed the citation.

6

Five Star and Oscar Curiel's appeal went before an ALJ for a later review by the

DLI Director. At a hearing before the ALJ, Curiel testified that he and Marcelina Torres

engaged in a personal relationship and that he paid her $2,000 per month, with $249

allocated for child support. Torres averred that Curiel, on behalf of Five Star, verbally

promised to pay her $16 per hour, plus a ten percent commission on sales. She added

that Five Star paid her nothing.

The ALJ issued an initial order in favor of Marcelina Torres. The order contained

findings of fact and conclusions of law. One finding noted that conflicting accounts of

Marcelina Torres and Oscar Curiel required an assessment of the credibility of Curiel and

Torres. The ALJ's finding of fact 4.4 declares:

> The Appellants, Five Star Guttering, LLC, (Five Star Guttering) and
> Oscar Curiel (Curiel), and the Wage Claimant, Marcelina Torres (Torres),
> differed on material facts. In particular, Torres asserted she had helped
> Curiel start up his business in May 2017 and worked there until February
> 2019. She asserted Curiel verbally agreed to pay her $16.00 per hour, plus
> a ten percent commission on all sales. *Dept. Ex. 2; Pg. 1-2.* However,
> Curiel originally denied Torres worked for the business, was ever an
> employee or ever paid by commission. Rather, Curiel asserted he paid her
> $2,000 every month. *Dept. Ex. 2; Pgs. 9 & 15.* Later, Curiel claimed
> Torres was an "exempt", salaried employee. *Dept. Ex. 2; pg. 25.* Based on
> this difference of material facts, a credibility finding is warranted.

CP at 32. Finding of fact 4.5 found Torres' evidence more convincing. The finding

reads:

> Based on the evidence, including the documented evidence and
> testimony of third-parties, who collaborated Torres' version of the events,

7

the undersigned administrative law judge finds Torres' evidence more convincing.

CP at 32. The ALJ entered its subsequent findings based on this credibility finding. On appeal to this court, Five Star challenges the ALJ's findings of fact 4.5 and 4.6, but not 4.4.

We mention other findings of fact contested by Five Star. Finding of fact 4.11 affirmed that, when Five Star Guttering began operations, Oscar Curiel paid Marcelina Torres in cash and Curiel never spoke with Torres about being paid a salary or an hourly rate. Finding of fact 4.40 declares:

> The Employer provided a copy of pay to Torres, with an end date of September 15, 2017. Torres' rate of pay was listed as $17.87 for 16 hours worked.

CP at 114. The second sentence in paragraph 4.40 contains an error. The finding should refer to Curiel's, not Torres', rate of pay. Curiel brought his own pay records to the ALJ hearing for comparison with Torres' claim.

Five Star challenges finding 4.65:

> The Employer provided the pay statement for Torres for the pay period of July 16, 2017 to July 31, 2017. The Employer paid Torres $13.50 per hour for 40 hours of work, equaling $540.00 in pay. Also was [sic] the Payroll Summary for 2017, in which Torres received $15,514.77 in gross pay.

CP at 116.  Finding of fact 4.65 also contains an error.  Instead of referencing the

"Employer," the finding should reference Marcelina Torres former employer, State Farm

Insurance Company.

Finding of fact 4.63 proclaims:

On May 13, 2020, Five Star Guttering provided a written response to Torres' wage complaint.  The Employer asserted Torres worked some as the Office Manager but was never an official employee or ever employed by Five Star Guttering.  Testimony of Martinez, Dept. Ex. 18 and App. Exs. C & E.

CP at 116.

Finding of fact 4.73 reads:

For holidays and vacations Torres asserted she worked, Agent Martinez reduced such hours, unless Torres provided proof of work during such times.

CP at 117.

Five Star also assigns error to conclusions of law, including 5.11, 5.21, and 5.22.

Conclusion of Law 5.11 reads:

In the Present case, the Employer, Five Star Guttering, LLC, and Oscar Curiel, claims to have paid Marcelina Torres $2,000, in cash, each month.  While the Employer provided its bank statements showing numerous outgoing expenses, it was unable to provide documented evidence of payments made to and received by Torres.

CP at 40.  Conclusion of law 5.21 declares:

9

> Five Star Guttering and Oscar Curiel disputed Torres' hours worked. However, the Employer did not keep or provide timecards nor payroll records, refuting such hours worked. Ex. 18; Pgs. 1 & -5.

CP at 121. Finally, conclusion of law 5.22 reads:

> Since the Employer was unable to refute Torres' hours worked with timecards, payroll records or any other documented evidence, the Department adopted Torres' documented "hours worked."

CP at 121. The ALJ awarded Marcelina Torres $125,178.22 in back wages, interest, and penalties.

On November 15, 2022, DLI's Director upheld the citation and notice of assessment, while adopting the findings of fact and conclusions of law entered by the ALJ in the initial order. On December 12, 2022, Five Star filed a petition for judicial review, with the superior court, of the DLI order.

The parties interrupted the process before the superior court by an agreement remanding the case to the DLI Director to determine whether Marcelina Torres qualified as exempt from overtime pay under the administrative employee exemption. The DLI Director then entered a finding of fact not earlier written by the ALJ. The finding provided:

> "6. The Appellant [Five Star Guttering] did not compensate Marcelina Torres on a salary or fee basis."

CP at 2071.

10

Based on this finding of fact, the DLI Director ruled that Marcelina Torres did not serve in an administrative capacity. Thus, Five Star owed overtime pay. The superior court then affirmed the DLI Director's ruling awarding Torres wages.

LAW AND ANALYSIS

Five Star and Oscar Curiel now appeal the DLI order to this court. We will hereafter collectively refer to both appellants as Five Star. Five Star challenges many of the ALJ's findings of fact and conclusions of law adopted by the DLI Director. Five Star also challenges the finding of fact independently entered by the Director after the remand from the superior court.

The Washington Administrative Procedure Act (WAPA), chapter 34.05 RCW, governs Five Star's appeal. Under WAPA, this Court must presume that agency decisions are correct, with the burden of proof resting on the challenger. RCW 34.05.570(1)(a); *Overlake Hospital Association v. Department of Health*, 170 Wn.2d 43, 49–50, 239 P.3d 1095 (2010). We stand in the same position as the superior court and apply WAPA to DLI's record. *DaVita, Inc. v. Department of Health*, 137 Wn. App. 174, 180, 151 P.3d 1095 (2007). Thus, the decision we review is that of the agency, not of the superior court. *Campbell v. State Employment Security Department*, 180 Wn.2d 566, 571, 326 P.3d 713 (2014). We will grant relief only if the agency followed

an unlawful procedure, misinterpreted or misapplied the law, or issued an order not supported by substantial evidence. RCW 34.05.570(3)(c), (d), (e).

WAPA describes the procedures by which agencies conduct internal review of the adjudicative decisions of lower officials, such as ALJs. The head of the department maintains final authority to decide the dispute, including authority to enter findings of fact contrary to findings of the ALJ. RCW 34.05.464(4). Nevertheless, the department director should give due regard to the ALJ's opportunity to observe the witnesses. RCW 34.05.464(4). We review the DLI Director's, not the administrative law judge's, findings of fact for substantial evidence. *Tapper v. Employment Security Department*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993). This rule lacks importance in this appeal because the DLI Director adopted the ALJ's findings. We refer to the findings by the ALJ's finding numbers.

Findings of Fact

We separately address Five Star's challenges to findings of fact from challenges to conclusions of law, beginning with findings of fact. We review an agency's factual findings to determine whether they are supported by evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premise. *Department of Licensing v. Sheeks*, 47 Wn. App. 65, 69, 734 P.2d 24 (1987). In substantial evidence review, we assess the facts and reasonable inferences from those facts in the light most

favorable to the agency. *Cummings v. Department of Licensing*, 189 Wn. App. 1, 10-11, 355 9.3d 1155 (2015). We then decide whether the department's conclusions of law flow from its findings. *Young v. Department of Labor and Industries*, 81 Wn. App. 123, 128, 913 P.2d 402 (1996).

We underscore finding of fact 4.4 in the ALJ's initial order that mentioned the need to weigh the credibility between Marcelina Torres and Oscar Curiel with regard to an agreement to pay wages and the nature of Torres' work. RCW 34.05.461(3) directs the ALJ to identify those findings based on the credibility of evidence or demeanor of the witnesses.

When challenging finding of fact 4.5 that finds Marcelina Torres' evidence persuasive, Five Star cites inconsistencies in Torres' testimony, such as contradictions about child support payments and email in which Torres acknowledged receiving some compensation. Five Star then insists that these purported inconsistencies prove Oscar Curiel to be the more credible witness. Five Star, however, ignores that third-party testimony and documentation corroborated Torres' version of events.

We do not disturb findings of fact supported by substantial evidence even if other evidence conflicts with that substantial evidence. *McCleary v. State*, 173 Wn.2d 477, 514, 269 P.3d 227 (2012). We will overturn an agency's factual findings only if they are clearly erroneous, meaning the entire record must leave us with a firm and definite

conviction that a mistake was made. *University of Washington Medical Center v. Department of Health*, 164 Wn.2d 95, 102, 187 P.3d 243 (2008). A reviewing court must carefully refrain from searching for additional evidence, from weighing the evidence, and from evaluating credibility. *Singh v. Department of Licensing*, 5 Wn. App. 2d 1, 9, 421 P.3d 504 (2018).

Substantial evidence established that, at Five Star's genesis in 2017, Oscar Curiel paid Marcelina Torres in cash. Torres later documented her hours worked using a phone application while attending networking meetings, preparing estimates, scheduling installations, sending invoices, and performing other tasks. The company's accountant, Scott Alan Williams, lacked firsthand knowledge of Torres' hours or payments. In response to Torres' wage complaint, Five Star asserted that, although Torres occasionally served as office manager, she was never an official or full-time employee. Curiel testified that Five Star and Torres lacked any salary agreement. Torres presented testimony and documentation conflicting with Five Star's assertions. The ALJ, as the assessor of credibility, could find Torres the more credible party based on substantial evidence.

Five Star argues that the overarching credibility finding is erroneous without a detailed analysis of Marcelina Torres' testimony. The company adds that each factual finding must be individually supported by substantial evidence to permit meaningful

review.  Nevertheless, Five Star cites no authority to support this legal assertion.  Instead, the APA "does not require that findings and conclusions contain an extensive analysis." *US West Communications, Inc. v. Washington. Utilities & Transportation Commission*, 86 Wn. App. 719, 731, 937 P.2d 1326 (1997).  We do not consider conclusory arguments that lack citation to authority.  RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.3d 549 (1992); *In re Marriage of Angelo*, 142 Wn. App. 622, 628 n.3, 175 P.3d 1096 (2008).

DLI acknowledges that substantial evidence did not support some findings of fact. For instance, evidence showed that Oscar Curiel and Marcelina Torres discussed her compensation for work at Five Star, contrary to finding of fact 4.11.  Finding of fact 4.40 misidentified Torres instead of Curiel, who submitted his paystub as evidence of his rate of pay.  Finding of fact 4.65 erroneously attributed a State Farm paycheck to Torres as if issued from Five Star.  This finding related to conflicting accounts of her employment between July 16, 2017, and July 31, 2017.  Nevertheless, these errors did not impact the outcome, since the citation and notice of assessment only required that Five Star compensate Torres based on the minimum wage.  Absent prejudice, reversal is unwarranted.  *See Quest Corp. v. Washington Utilities & Transportation Commission*, 140 Wn. App. 255, 260, 166 P.3d 732 (2007).  Curiel fails to demonstrate how the misattributed exhibit or Torres' paystub influenced the case's outcome.

In its brief, Five Star presents an alternative narrative that disputes findings of fact as to the accuracy of the hours Marcelina Torres tracked on her electronic application (finding of fact 4.16), the extent of her credit card purchases claimed as business expenses (finding of fact 4.19), the credibility of Torres' testimony about when she began working full-time and her scope of work (finding of fact 4.21), evidence supporting Oscar Curiel's reimbursement of all credit card expenses (finding of fact 4.34), negative inferences from Five Star's response to Torres' wage complaint (finding of fact 4.63), evidence about DLI Agent Yocelin Martinez's offset of Torres' hours for holidays and vacations (4.73), and Curiel's occasional payment of $2,000 to Torres as compensation (finding of fact Fact 6). Five Star's alternative facts do not warrant reversal. To repeat, when evidence conflicts or when different inferences can be drawn from the evidence, the judge may pick and choose the evidence on which to rely and the evidence to ignore, as long a substantial evidence supports the findings. The judge may also draw any reasonable inferences. *Davis v. Pennington*, 24 Wn. App. 802, 804, 604 P.2d 987 (1979).

Conclusions of Law

Five Star challenges several conclusions of law on the basis that evidence did not support them. We will grant relief if the Board erroneously interpreted or applied the law. *Sebastian v. Department of Labor and Industries*, 95 Wn. App. 121, 124, 974 P.2d 374 (1999). We will also afford relief from an arbitrary and capricious order or an order

16

that reflects a willful and unreasoning disregard of the facts and circumstances. *Providence Health & Services-Washington v. Department of Health of the State of Washington*, 194 Wn. App. 849, 856–57, 378 P.3d 249 (2016). We perform a de novo examination of whether the superior court's conclusions logically follow from its findings. *Nelson v. Department of Labor & Industries*, 175 Wn. App. 718, 723, 308 P.3d 686 (2013).

Some of the award to Marcelina Torres included overtime pay. Five Star insists that, assuming it owed Marcelina Torres any wages, the evidence established an exemption from overtime pay. Under former RCW 49.46.010(3)(c) (2015), employees in an administrative capacity are exempt from overtime compensation. Five Star highlights that many of Torres' duties, such as scheduling, advertising, customer contact, and attending networking events, were administrative in nature.

The burden to prove the applicability of an overtime exemption rests on the employer. *Drinkwitz v. Alliant Techsystems, Inc.*, 140 Wn.2d 291, 301, 996 P.2d 582 (2000) (plurality opinion). Without a salary, an employee does not qualify for the administrative exception to overtime. The exemption applies only if the employee "is compensated for his services on a salary or fee basis." Former WAC 296-128-520(4)(a) (1976).

17

Whether an employee was salaried is a finding of fact. *Tift v. Professional Nursing Services, Inc.*, 76 Wn. App. 577, 582, 886 P.2d 1158 (1995). Five Star assigned no error to DLI's finding that no salary agreement existed. Moreover, substantial evidence supported the conclusion that Torres did not receive a salary. Oscar Curiel admitted he did not consider his payments to Torres as a salary, and Curiel confirmed the absence of any salary agreement.

Five Star also challenges Conclusion of Law 5.11, which we repeat:

> In the Present case, the Employer, Five Star Guttering, LLC, and Oscar Curiel, claims to have paid Marcelina Torres $2,000, in cash, each month. While the Employer provided its bank statements showing numerous outgoing expenses, it was unable to provide documented evidence of payments made to and received by Torres.

CP at 40.

Five Star argues this conclusion of law mistakenly recognized a rule that the employer's failure to maintain adequate records precludes any findings or conclusions favorable to the employer. The conclusion of law does not misstate the law, because the conclusion mentions no law and does not apply the facts to the law. The conclusion does not declare that the employer must always provide documentation of payment of wages to the employee to avoid an assessment. Rather, the conclusion of law merely states that Five Star's bank statements did not confirm payments received by Marcelina Torres. As

18

such, conclusion of law 5.11 serves as a finding of fact, not a conclusion of law.

Substantial evidence supported this finding.

When the trial judge confuses a finding of fact as a conclusion of law or vice

versa, we review the conclusion as a finding of fact or the finding of fact as a legal

conclusion. *Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986); *In re Estate*

*of Haviland*, 162 Wn. App. 548, 561, 255 P.3d 854 (2011). We review findings of fact

and conclusions of law not as they are labeled, but for what they truly are. *State v.*

*Luther*, 157 Wn.2d 63, 78, 134 P.3d 205 (2006). Findings of fact are determinations of

whether evidence shows that something occurred or existed. *Casterline v. Roberts*, 168

Wn. App. 376, 382, 284 P.3d 743 (2012). Conclusions of law are determinations made

by a process of legal reasoning from facts in evidence. *State v. Niedergang*, 43 Wn. App.

656, 658–59, 719 P.2d 576 (1986).

Five Star contends that it suffered prejudice from the administrative law judge's

perception that it advanced multiple unsuccessful theories to deny Marcelina Torres'

entitlement to overtime. Conclusions of Law 5.12–5.15 assert that Five Star and Oscar

Curiel argued Torres was an independent contractor rather than an employee and, after

analyzing the standard for determining independent contractor status, the ALJ concluded

that Five Star failed to meet its burden of proof. Five Star emphasizes that it never

claimed Torres was an independent contractor. Instead, DLI addressed the question of

the employment status on remand under an agreed order because DLI did not initially evaluate whether Torres was exempt from overtime under the administrative employee exemption in former RCW 49.46.010(c)(3) (2015) and former RCW 49.46.130(2)(a) (2013). We reject this contention. Even if the conclusions of law erroneously attributed an unsuccessful argument to Five Star, the company presented multiple failed theories. For example, Five Star first denied Torres was an employee and later claimed she was an exempt salaried employee.

Five Star argues that conclusion of law 5.18 mistakenly gave no credit for payments Oscar Curiel rendered to Marcelina Torres. The company underscores Torres' farewell email acknowledging the insufficiency of payments made by Curiel for her employment and childcare duties. Five Star also highlights that Torres initially sought less than $12,000 in her wage complaint.

DLI's decision not to offset or reduce Marcelina Torres' wages with the occasional $2,000 payments logically flowed from the evidence. Five Star presented no employment contract with Torres. The company did not regularly pay the $2,000 and never directly linked the payments to employment. Five Star failed to process the payments through payroll or provide proof that Torres received them. Curiel claimed in official superior court documents that the $2,000 payments were for child support. The

decision not to grant an offset does not reflect a willful or unreasoning disregard of the

facts and circumstances.

Conclusions of Law 5.21 and 5.22 read:

> Five Star Guttering and Oscar Curiel disputed Torres' hours worked.
> However, the Employer did not keep or provide timecards nor payroll
> records, refuting such hours worked. *Ex. 18; pgs. 1 & 5.*
> Since the Employer was unable to refute Torres' hours worked with
> timecards, payroll records or any other documented evidence, the
> Department adopted Torres' documented 'hours worked'.

CP at 42. Five Star argues that these conclusions effectively stripped the company of its

ability to challenge the amount cited by DLI as owed to Marcelina Torres, solely due to

its failure to maintain proper records. This argument repeats the contention forwarded to

defeat conclusion of law 5.11.

When an employer fails to maintain proper and accurate records and an employee

demonstrates she performed work for which she was not properly compensated, the

burden shifts to the employer to come forward with evidence of the precise amount of

work performed or with evidence to negate the reasonableness of the inference to be

drawn from the employee's evidence. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S.

680, 687–88, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946). If the employer fails to produce

such evidence, damages may be awarded to the employee, even if the amount is an

approximation. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946). An

employer who fails to keep accurate payroll records cannot object to the lack of exactness

or precision in calculating damages that would have been achievable if it had complied with statutory record-keeping requirements. *MacSuga v. County of Spokane*, 97 Wn. App. 435, 445–46, 983 P.2d 1167 (1999).

Five Star kept no records of Marcelina Torres' rate of pay or the amount paid each pay period, as required by RCW 49.46.070 and WAC 296-128-010. Torres met her initial burden of showing she was not properly compensated. Five Star failed to meet its burden of proof once the burden shifted to it.

Finally, Five Star contends that no evidence showed that Marcelina Torres was authorized to work overtime. Nevertheless, an employer is liable for overtime wages if it knew or should have known that an employee performed uncompensated work. *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981); *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986). The DLI's determination that Oscar Curiel knew or should have known Torres was working overtime was not willful or unreasoning but rather a reasonable inference based on the facts and circumstances. Even when the evidence supports two conflicting conclusions, an action taken after due consideration is not arbitrary and capricious even though a reviewing court may believe it to be erroneous. *City of Redmond v. Central Puget Sound Growth Management Hearings Board*, 136 Wn.2d 38, 47, 959 P.2d 1091 (1998).

CONCLUSION

In sum, DLI Director committed no errors when confirming DLI's assessment against Five Star for $125,178.22 in back wages, interest, and penalties. Substantial evidence supported all critical findings of fact and those findings supported the conclusions of law that correctly identified Washington's law on wages. As the superior court did, we affirm the DLI Director. We also deny Five Star's request for attorney fees.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Staab, A.C.J.

_____
Melnick, J.P.T. [1]

---

[1] Rich Melnick, a retired judge of the Washington State Court of Appeals, is serving as a judge pro tempore of this court pursuant to RCW 2.06.150(1).